DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Fulton County Court of Common Pleas.
 {¶ 2} Appellant and appellee, Renee S. Tallman, were married in 1992. They have a son, Matthew, and twin daughters, Alexia and Meriah. In July 2001, appellant moved out of the marital residence. On February 2, 2002, he filed a complaint seeking a divorce from appellee, an equitable division of the marital property, spousal support, and an allocation of parental rights and responsibilities. Appellant also requested that he be named the residential parent and legal custodian of the parties' children and sought child support from appellee.
 {¶ 3} Appellee answered and asked the court: (1) for an equitable division of the marital property; (2) that she be named the residential parent and legal custodian of the children; (3) for an award of child support; and (4) for an award of spousal support.
 {¶ 4} The parties agreed that they would share in parenting during the pendency of the divorce proceeding. During the week, the children were supposed to stay with appellee from 3:30 p.m. until 7:00 p.m. and on alternating weekends. They would be in the care of appellant from 7:00 p.m. to 8:00 a.m. on week days and on alternating weekends. It is undisputed that appellee did not always comply with this schedule because the children, especially Matthew, did not want to spend time with their father.
 {¶ 5} On April 3, 2003, the trial court filed a judgment granting appellant a divorce and distributing the marital property. The court named appellee the residential parent and legal custodian of Matthew, Jr. ("Matt"), Alexia, and Meriah. Appellant was ordered to pay, as calculated under the child support guidelines, child support in the amount of $243.96 per week, plus a two percent processing fee. The court further noted that appellant had a substantial arrearage on his obligation to pay temporary child support in the amount of $62.75 per week, plus a two percent processing fee. The court therefore entered a judgment in favor of appellee in the sum of $3,263, plus a total of $62.26 for the unpaid processing fee.
 {¶ 6} The court below granted appellant the right to visitation, pursuant to the "Fulton County Schedule," with Alexia and Meriah. However, the court restricted appellant's visitation "until such time as his therapist shall recommend visitation, and the same shall be phased in per the therapist's recommended schedule or further court order."
 {¶ 7} The court also ordered appellant to pay appellee spousal support in the amount of $1 per year for four years, but reserved jurisdiction for that period of time for the purpose of modification, if necessary.
 {¶ 8} Appellant appeals the judgment of the trial court and asserts the following assignments of error:
 {¶ 9} "The trial court erred in designating the defendant-appellee as residential parent and legal custodian of the parties' three (3) minor children, namely, Matthew Jr., d.ob. 12/21/91 and Alexia [sic] and Mariah [sic], d.o.b. 4/27/93 on the basis that the trial court abused its discretion in making such an award."
 {¶ 10} "The trial court erred in ordering appellant to provide medical insurance coverage for the minor children when the court's finding was that appellee actually had the medical insurance coverage on the minor children and the court found that she should continue to provide the same."
 {¶ 11} "The trial court erred in that it did not decide temporary motions to show cause for visitation and companionship violations [sic] which were pending prior to the trial of this cause [sic] thereby merging all of those motions in the final order and not granting the relief requested."
 {¶ 12} "The court's spousal support award was contrary to current Ohio law and an abuse of discretion."
 {¶ 13} In his first assignment of error, appellant contends that the trial court abused its discretion in designating appellee the residential parent and legal custodian of the parties' three minor children. He argues, in essence, that finding it was in the best interest of Matthew, Alexia, and Meriah to name their mother as their residential parent and legal custodian is against the manifest weight of the evidence.
 {¶ 14} In a divorce action, the trial court "shall allocate the rights and responsibilities for the care of the minor children of the marriage." R.C. 3109.04(A). When making an allocation of parental rights, the trial court must consider the child's best interest. R.C. 3109.04(B)(1). In determining best interest, the trial court is required to consider all relevant factors including, but not limited to:
 {¶ 15} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 16} "(b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 17} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 18} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 19} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 20} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 21} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 22} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 {¶ 23} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 24} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
 {¶ 25} We cannot reverse a trial court's allocation of parental rights and responsibilities absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. An abuse of discretion connotes more than an error of law or judgment; it indicates that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Moreover, when a trial court is presented with evidence on the factors listed in R.C. 3109.04(F), it is the trial court's role to resolve factual disputes and weigh the testimony and credibility of witnesses. Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 418; Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23. If competent, credible evidence supports the trial court's determination of factual matters, will not reverse its judgment as being against the manifest weight of the evidence. Davis v. Flickinger, 77 Ohio St.3d at 418.
 {¶ 26} As applied to the case before us, both parents expressed a desire to have custody of their children. The trial court had the report resulting from one home investigation and the results of two in-chamber interviews with the children in which they all stated that they wished to live with their mother.
 {¶ 27} During the pendency of the divorce, appellant was living with a woman named Diana. None of his children liked Diana or her three children because they were "mean." Alexia, Meriah, Matt, and appellee indicated that appellant would discipline his children by means of physical force. In the home study investigation report, Alexia told the investigator that she feels safer at her mother's home and that appellant does not pay enough attention to them. She also stated that Matt is scared while he is at his father's house and that his father "makes him depressed."
 {¶ 28} Meriah reported that "she gets lots of spankings from her dad, and he made a wooden paddle that he sometimes uses. * * * [T]he paddle hurts more than his hand or a belt, but that he gets to pick what he uses." She said that her mother has the children hug and kiss each other if they are fighting, and that she sometimes "grounds" them for two days.
 {¶ 29} Matt stated that he wanted to live with his mother because his father used to hit his mother, hits his girlfriends, and hits and kicks Matt. Matt told his therapist that, on at least one occasion, his father slammed his head against the wall. Matt is in therapy for his anxiety and depression. His therapist testified, that both parents need parenting classes, but that she would be "more comfortable" if Matt resided with his mother. Although appellant agreed to be assessed for alcohol and substance abuse, he never admitted that he physically abused his children, appellee, or his girlfriend, Diana.
 {¶ 30} Appellee resides with a man named Adam, who, in 1992, had a felony conviction for attempted gross sexual imposition. The sexual abuse involved his half-sister. In June 1994, there were two other referrals made to the Fulton County Department of Jobs and Family Service alleging that Adam sexually abused a second half-sister and another child. Nevertheless, there is nothing in the record of this case showing that criminal charges resulted from these referrals.
 {¶ 31} At the time of the divorce hearing, Adam had custody of his two children, and appellee was pregnant with his child. Alexia, Meriah, and Matt have an "up and down" relationship with Adam, but they do not like his children. Because appellee works from 10:00 p.m. until 7:30 a.m., Adam gets the children ready for school before he goes to work. The children are frequently unsupervised when they arrive home from school because appellee is sleeping.
 {¶ 32} Due to the fact that they have learning problems, Matt and Meriah are enrolled in special education classes. Matt, however, is making progress. Meriah's progress is described as "up and down." Her teacher believes that Meriah is dyslexic. Matt missed several days of school while their parents' divorce was pending. According to appellant, these were days when he had an appointment with his therapist. Throughout the school year, the twins sometimes appeared to be "disheveled."
 {¶ 33} The evidence offered at the divorce hearing revealed that appellant started several home projects and never finished them. After he left the marital residence, appellee had to contend with an unusable toilet, a bathtub that would not drain, a kitchen that had no hot water, and an unfinished roof over the kitchen. In addition, appellant put new windows in the house, but they were too small for the opening. Consequently, there were holes around the windows. Appellee lacked the funds to repair these problems, and appellant failed to contribute any money for household expenses after he moved out. Eventually, appellee was forced to abandon the marital residence. At the time of the hearing on this matter, appellee, Adam, and the children had recently rented and were living in a large four bedroom, three bathroom house.
 {¶ 34} On the issue of visitation, appellee admitted that because the children were afraid of their father, she would not force them to follow the agreed upon temporary parenting schedule. According to appellee, Matt would become physically ill when faced with the prospect of spending time with appellant, and "bribery" did not work. Therefore, appellant had limited contact with his son during the pendency of the divorce. Nevertheless, with counseling, Matt was overcoming some of the fear he feels for his father. Appellant estimated that the twins followed the parenting schedule "50 to 60" percent of the time. Appellee testified that she would work to improve the relationship between appellant and his children.
 {¶ 35} On the question of child support, appellant failed to comply with the award of temporary child support and accumulated a $3,137.50 arrearage. He also failed to reimburse appellee for the cost of a pair of eyeglasses for one of the children. The remaining listed factors are not applicable to this case.
 {¶ 36} Based upon the foregoing facts, we conclude that there is competent, credible evidence to support the trial court's allocation of parental rights and responsibilities. Therefore, the lower court did not abuse its discretion in naming appellee the residential parent and legal custodian of her children, and appellant's first assignment of error is found not well-taken.
 {¶ 37} In his second assignment of error, appellant maintains that the trial court's finding of fact and conclusion of law are in conflict on the issue of which parent is to provide medical insurance coverage for the parties' three children. We agree.
 {¶ 38} In his material finding of fact, the trial judge determined that appellee provides medical coverage for her children and that she should continue to do so. In that finding, the judge also stated that appellant would be responsible for medical coverage only if appellee lacked medical insurance. Further, the court indicated that if appellant was required to provide the mandated coverage, see R.C. 3119.30, his child support obligation would be adjusted accordingly.
 {¶ 39} In his conclusion of law, the trial court decreed "that each party will keep their children medically insured." The child support worksheet does not reflect any adjustment to appellant's child support obligation. We therefore find that the trial court's judgment as it pertains to medical coverage insurance is ambiguous and, upon review, we cannot ascertain the court's intent on this issue. Thus, appellant's second assignment of error is found well-taken.
 {¶ 40} Appellant's third assignment of error maintains that the trial court erred in failing to hear and rule on three motions in which appellant alleged that appellee was denying him the visitation and companionship rights as set forth in the agreed upon temporary order. Appellant acknowledged during oral argument before this court that the entry of the final judgment in this case rendered his third assignment of error moot. Therefore, we shall not address the merits of his arguments and find appellant's third assignment of error not well-taken.
 {¶ 41} In his fourth assignment of error, appellant challenges the trial court's decision to award appellee spousal support. Appellant claims that appellee never requested spousal support, and that the trial court failed to consider all of the factors listed in R.C. 3105.18(C)(1) in determining whether spousal support was appropriate and reasonable.
 {¶ 42} Prior to any consideration of appellant's arguments, we note that appellee requested an award of spousal support in her answer.
 {¶ 43} R.C. 3105.18(C)(1) provides that a trial court must determine whether spousal support is appropriate and reasonable in a given case and, if so, decide the nature, amount, terms of payment and the duration of the support. In reaching a decision on these matters, the court is required to consider all of the following factors:
 {¶ 44} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 45} "(b) The relative earning abilities of the parties;
 {¶ 46} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 47} "(d) The retirement benefits of the parties;
 {¶ 48} "(e) The duration of the marriage;
 {¶ 49} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 50} "(g) The standard of living of the parties established during the marriage;
 {¶ 51} "(h) The relative extent of education of the parties;
 {¶ 52} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 53} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 54} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 55} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 56} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 57} "(n) Any other factor that the court expressly finds to be relevant and equitable." Id.
 {¶ 58} A trial court's decision granting spousal support will not be reversed on appeal unless the trial court abused its discretion in making the award. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67. Its decision must provide sufficient detail to enable a reviewing court to determine the award is fair, equitable, and in accordance with law. Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 97. The trial court is not required to comment on each statutory factor. Instead, the record only needs to show that the court considered each factor in making its award. Carman v. Carman (1996), 109 Ohio App.3d 698, 703.
 {¶ 59} Here, the evidence before the trial court disclosed that appellant makes $56,000 per year and that appellee earns $21,320 per year. Appellant, who is 28 years old, and appellee are still relatively young. Appellant has welding and hydraulic certification, and his income has steadily risen with each of his job changes. Appellee has a high school degree. While appellant is in counseling for his alcohol abuse, neither of the parties revealed any major health problems.
 {¶ 60} Throughout the 11 year marriage, appellee normally remained home with the children. She only worked when appellant was between jobs. However, for the last four years of the marriage appellee was employed full time and participated in a 401K plan. Appellant, at this point in time, has no retirement benefits. It is unknown as to whether appellee will be able to continue working after the birth of her child.
 {¶ 61} During the course of the marriage, the parties appear to have enjoyed an average standard of living. Nevertheless, after appellant left the marital residence, appellee was unable to make payments on the house and foreclosure proceedings were commenced by the mortgagee. Appellee was also forced to file for bankruptcy to discharge her personal debts. She and Adam rent a large home for $800 per month. Appellee testified, however, that her current relationship with Adam is "rocky." Appellant is purchasing a home on land contract, but he claimed that he is also contemplating the discharge of his debts through bankruptcy. Apparently, at the time of the divorce hearing, he and Diana no longer lived together. Thus, appellant's only expenses are for himself. Appellant was awarded the tax exemptions for the twins, and the minimal amount of the spousal support granted by the trial court incurs no tax consequences for either of the parties.
 {¶ 62} In considering all of the above, we cannot say that the trial court abused its discretion in determining that an award of spousal support is appropriate and reasonable in this instance. Moreover, while we may not agree with the nominal amount awarded, the court below clearly sets forth the nature of the award, the amount of the award, its duration, and the terms of payment. Accordingly, appellant's third assignment of error is found not well-taken. cf. Durbin v. Durbin (Feb. 19, 1992), 9th Dist. No. 15158.
 {¶ 63} The judgment of the Fulton County Court of Common Pleas is affirmed, in part and, and reversed, in part. This cause is remanded to the trial court for the sole purpose of deciding which parent is responsible for medical insurance coverage for Matthew, Jr., Alexia, and Meriah. Appellant and appellee are ordered to pay, in equal shares, the costs of this appeal.
Judgment Affirmed, in Part, and Reversed, in Part.
Knepper and Singer, JJ., concur.